*FILED*
CLERK, U.S. DISTRICT COURT
SEP 10 2010
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUICY COUTURE, INC. ET AL., <br> Plaintiffs, <br> v. <br> IL KEUN OH, ET AL., <br> Defendants. | No. CV 09-0387 CBM (PJWx) <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION |

The matter before the Court is Plaintiffs Juicy Couture, Inc.'s and L.C. Licensing, Inc.'s Motion for Default Judgment and Permanent Injunction ("Motion for Default Judgment"). [Doc. No. 17.] For the reasons stated below, the Court **GRANTS** the Motion for Default Judgment.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Juicy Couture, Inc. ("Juicy") and L.C. Licensing, Inc. ("LCL") (collectively, "Plaintiffs") request an entry of default judgment against Defendants Il Keun Oh, Jacqueline Oh, Joon Yeop Kim, and Elegance Fashion Mart, Inc.

("Elegance") (collectively, "Defendants") for the alleged infringement of Plaintiffs' trademarks. Juicy designs, manufactures, and sells apparel, footwear, handbags, jewelry, and other fashion-related products in the United States under the trademarks and trade names, JUICY, JUICY COUTURE, JUICY GIRL, CHOOSE JUICY, and WEAR JUICY. (Compl. at ¶ 1.) LCL owns Juicy's trademarks and trademark registrations and licenses these marks exclusively to Juicy.[1] (*Id.* at ¶ 2.) Specifically, LCL owns three federally registered trademarks, JUICY (for clothing), JUICY COUTURE (for women's clothing), JUICY COUTURE (for clothing) (collectively, "the Juicy Marks"), and four federal trademark applications for JUICY, JUICY COUTURE, JUICY GIRL, and CHOOSE JUICY for use in connection with apparel, handbags, jewelry, accessories, and cosmetics, etc. (*Id.* at ¶ 8, Ex. A.) Plaintiffs allege that Defendants used the Juicy Marks, without authorization or license from Plaintiffs, in connection with distributing, exporting, importing, selling, and offering to sell counterfeit jewelry. (*Id.* at ¶ 16.) Plaintiffs further allege that some or all of the counterfeit jewelry delivered and sold by Defendants contained lead but Defendants failed to provide a precautionary label as required by law. (*Id.*) Finally, Plaintiffs allege that Defendants purchased the counterfeit jewelry from a source that was not authorized or licensed by Plaintiffs to offer for sale or sell products bearing the Juicy Marks, under circumstances in which Defendants knew or should have known that the source was not authorized or licensed by Plaintiffs to offer for sale or sell the products bearing the Juicy Marks. (*Id.* at ¶ 17.)

Defendants were also subject to criminal liability for their conduct. On April 20, 2010, the individual Defendants entered guilty pleas for trafficking in counterfeit goods bearing the Juicy Marks, among others. (Declaration of Robert

---

[1] Prior to 2003, Travis Jeans, Inc. ("Travis Jeans") owned the trademarks, JUICY and JUICY COUTURE. (Compl. at ¶ 1.) In 2003, Liz Claiborne, Inc. acquired Travis Jeans and Travis Jeans' corporate name was changed to Juicy. (*Id.*) After the acquisition, the trademarks were assigned to Liz Claiborne, Inc's licensing subsidiary, LCL. (*Id.* at ¶ 2.)

1  P. Damone ("Damone Decl.") at ¶ 5, Exs. 2-4.) In connection with their plea
2  agreements, Defendants Oh and Oh also admitted that they were the operators of
3  Elegance and Defendant Kim admitted being Elegance's business manager. (*Id.*)
4      On January 16, 2009, Plaintiff filed a Complaint against Defendant for: (1)
5  federal trademark infringement and counterfeiting; (2) federal trademark dilution;
6  (3) false designation of origin and false advertising; (4) unfair competition; (5)
7  trademark dilution; (6) counterfeiting; (7) common law trademark infringement;
8  and (8) common law unfair competition. [Doc. No. 1.] The process server made
9  at least three (3) attempts to personally serve Defendants. [Doc. Nos. 9-12.] The
10 process server, Hector Moya, declared that he thereafter served four (4) copies of
11 the summons and Complaint, one for each Defendant, on Wendy Kim, Elegance's
12 manager, at 124 East Olympic Blvd. #110, Los Angeles, CA 90015 on February 4,
13 2009, and mailed copies of the same in four (4) separate envelopes, one for each
14 Defendant, to that same address on February 10, 2009. (Declaration of Hector
15 Moya ("Moya Decl.") at ¶¶ 2-4.) Defendants failed to respond to the Complaint.
16 Consequently, on June 23, 2009, Plaintiffs filed a Request for Clerk to Enter
17 Default against Defendants, which was served on Defendants via U.S. mail. [Doc.
18 No. 14.] On June 24, 2009, the clerk entered a default against Defendants. [Doc.
19 No. 15.] On June 2, 2010, the Court, *sua sponte*, ordered that Motions for Default
20 Judgment must be filed no later than June 14, 2010, or the action would be
21 dismissed for lack of prosecution. [Doc. No. 16.] On June 10, 2010, Plaintiffs
22 filed their Motion for Default Judgment for damages in the amount of $400,000,
23 attorneys' fees and costs, and a permanent injunction. [Doc. No. 17.] An
24 opposition and reply were filed thereto. [Doc. Nos. 20, 21.]

## LEGAL STANDARD

26     When a party against whom a judgment for affirmative relief is sought has
27 failed to plead or otherwise defend, the court may enter a default judgment upon
28 application by the plaintiff, and after an entry of default by the clerk. *See* Fed. R.

3

1  Civ. P. 55(b)(2). Nonetheless, a plaintiff is not automatically entitled to a default
2  judgment; entry of a default judgment is within the sound discretion of the court.
3  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *United States v.*
4  *Approximately $28,000 in U.S. Currency*, 2010 U.S. Dist. LEXIS 40302, *4 (N.D.
5  Cal. Apr. 5, 2010) (Conti, J.) "The general rule of law is that upon default the
6  factual allegations of the complaint, except those relating to the amount of
7  damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,
8  917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560
9  (9th Cir. 1977)); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d
10 696, 702 (9th Cir. 2008). "However, a 'defendant is not held to admit facts that
11 are not well-pleaded or to admit conclusions of law.'" *DirecTV, Inc. v. Hoa*
12 *Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Nishimatsu Constr. Co. v.*
13 *Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## DISCUSSION

### I. Defendants were Properly Served by Plaintiffs

A plaintiff must serve each defendant with a summons and a copy of the complaint. FED. R. CIV. P. 4(c)(1). An individual within a judicial district of the United States may be served in accordance with federal or state law. FED. R. CIV. P. 4(e)(1). In California, service of a summons is deemed complete by leaving a copy of the summons and complaint during usual office hours at a defendant's office with a person who is at least 18 years of age and apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid, to that defendant at the place where a copy of the summons and complaint were left. CAL. CIV. PROC. CODE § 415.20 (2009). Although there are separate requirements for personal service of a corporation,[2]

---

[2] A corporation can be served by delivering a copy of the summons and complaint to the person designated as agent for service of process, president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service. CAL. CIV. PROC. CODE § 416.10.

the same requirements apply for substituted service. *U.S. Equal Employment Opportunity Comm'n v. Happy Dog Enters., LLC*, 2008 U.S. Dist. LEXIS 104518, *5 (N.D. Cal. Dec. 15, 2008) (Ware, J.); *see also Trs. of the S. Cal. IBEW-NECA Pension Plan v. Sabco Electrique, Inc.*, 2008 U.S. Dist. LEXIS 110464, *6-9 (C.D. Cal. Sep. 15, 2008) (Wright, J.). "Statutes governing substitute service shall be 'liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant'". *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (Cal. App. 4th Dist. 2001) (quoting *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392 (Cal. App. 4th Dist. 1992)). Thus, "[t]o be constitutionally sound the form of substituted serviced must be 'reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied.'" *Bein*, 6 Cal. App. 4th at 1392 (quoting *Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1416 (Cal. App. 3d Dist. 1986)).

     Defendants argue that they failed to appear because service was defective. (Defs.' Opp. at 2:18-20.) Defendants maintain that Plaintiffs knew or should have known that Wendy Kim was not a manager of Elegance's business location, nor a person authorized to accept service on behalf of the individual Defendants. (*Id.* at 3:3-6.) Defendants further contend that Elegance, a California corporation, should have been served pursuant to California Code of Civil Procedure 416.10, which requires service upon a designated person or officer. (*Id.* at 3:9-13.)

     Defendants' argument regarding the deficiency of service fails because Plaintiffs served Defendants in accordance with state law. "California law only requires service papers to be left with the person 'who is *apparently* in charge' of the office, not the person who *actually* is in charge." *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 U.S. Dist. LEXIS 64025, *11-12 (N.D. Cal. Jun. 28, 2010) (Whyte, J.) (emphasis in original) (finding that an employee appeared to be in charge due to

her presence at the office); *Lifted Research Group, Inc. v. Salem*, 2009 U.S. Dist. LEXIS 44850, *6-7 (N.D. Cal. May 15, 2009) (Conti, J.). To effectuate service on a corporation, Plaintiffs needed only to serve a person apparently in charge and then mail a copy of the summons and Complaint to the same address. *Happy Dog Enters.*, 2008 U.S. Dist. LEXIS 104518 at *5; *Sabco Electrique*, 2008 U.S. Dist. LEXIS 110464 at *8-10 (concluding that a receptionist's location in the office demonstrated that she was apparently in charge for purposes of state law requirements). Here, it was reasonable for the process server to conclude that Wendy Kim was a person apparently in charge because she advised him that she was the current manager of Elegance and that she would accept service on behalf of Defendants. (Moya Decl. at ¶ 3.) Significantly, Defendants do not dispute that they received service of the action at Elegance's business location.

Despite Defendants' objection, it is not relevant that the person who served Defendants was not a registered process server because any person who is at least 18 years old and not a party to the action may serve the summons and complaint. *See* FED. R. CIV. P. 4(c)(2); CAL. CIV. PROC. CODE § 414.10. Accordingly, Plaintiffs properly served the summons and Complaint on Defendants.

## II. Plaintiffs Complied with the Procedural Requirements for an Entry of Default Judgment

A party requesting a default judgment must provide a supporting declaration that includes: (a) when and against which party default was entered; (b) the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person; (d) that the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). L.R. 55-1.

Plaintiffs satisfied the foregoing procedural requirements by declaring that: (a) the clerk entered default against Defendants on June 24, 2009; (b) for failing to

respond to the Complaint; (c) none of the Defendants are infants or incompetent persons; (d) the Servicemembers Civil Relief Act does not apply; and, although not required under Federal Rule of Civil Procedure 55(b)(2), (e) Plaintiffs notified Defendants of the hearing on the Motion for Default Judgment. (Damone Decl. at ¶¶ 4-5.)

### III. Plaintiff is Entitled to an Entry of Default Judgment

In determining whether a default judgment is appropriate, a court may consider the following factors: (a) the possibility of prejudice to the plaintiff if no default is entered; (b) the merits of the plaintiff's substantive claim; (c) the sufficiency of allegations in the complaint; (d) the sum of money at stake in the action; (e) the possibility of a dispute concerning material facts; (f) whether the default was due to excusable neglect; (g) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

#### *a. Possibility of Prejudice*

Plaintiffs will suffer prejudice if the Court declines to enter a default judgment. Absent a default judgment, it is unlikely that Plaintiffs will be compensated for past losses or be able to avoid future harm. Accordingly, this factor weighs in favor of an entry of default judgment.

#### *b. Merits of Plaintiffs' Claims and Sufficiency of Complaint*

Plaintiffs allege eight causes of action: (i) federal trademark infringement and counterfeiting; (ii) federal trademark dilution; (iii) false designation of origin and false advertising; (iv) unfair competition; (v) trademark dilution; (vi) counterfeiting; (vii) common law trademark infringement; and (viii) common law unfair competition. [Doc. No. 1.]

##### *i. Trademark Infringement*

To prevail on a claim for trademark infringement, a holder of a registered mark must show that another person is using: (1) any reproduction, counterfeit,

copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. 15 U.S.C. § 1114(1)(a). "[T]he critical determination is 'whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product.'" *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jaradine*, 318 F.3d 900, 908 (9th Cir. 2003)).[3]

The Ninth Circuit, in turn, employs an eight factor test in determining the likelihood of confusion. *Jada Toys*, 518 F.3d at 632. These factors include: (1) strength of the mark; (2) proximity of goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*

Plaintiffs adequately allege that they own three federally registered trademarks for the Juicy Marks and Defendants used in commerce a reproduction or copy of the Juicy Marks, collectively, without authorization or consent, in connection with the distribution, advertisement, and sale of counterfeit jewelry to the public which was likely to confuse or deceive purchasers. (Compl. at ¶¶ 8, 24, 28.) Plaintiffs further allege that: (1) Plaintiffs' products bearing the Juicy Marks are sold in high-end department stores, such as Barney's, Bloomingdale's, and Neiman Marcus, among others; (2) Plaintiffs' products are easily recognized because a large proportion of the products prominently display the Juicy Marks; (3) Plaintiffs' products bearing the Juicy Marks have appeared in fashion and women's magazines, and television shows, and motion pictures; (4) various celebrities have worn Plaintiffs' products bearing the Juicy Marks; (5)

---

[3] Plaintiffs' claims for federal and state trademark infringement, false designation of origin, and unfair business practices are subject to the same test. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).

Defendants' products bear the identical Juicy Marks; (6) Defendants use the Juicy Marks to sell identical, but counterfeit, products; and (7) Defendants knowingly and intentionally used the Juicy Marks without Plaintiffs' authorization or consent. (*Id.* at ¶¶ 10-13, 16, 23-25.) On a motion for default judgment, the factual allegations of the complaint must be taken as true and Plaintiffs' allegations therefore establish a strong likelihood of confusion. *See Televideo Sys.*, 826 F.2d at 917-18. Accordingly, the Court finds that Plaintiffs are entitled to entry of default judgment on this claim, in addition to their false designation of origin and unfair business practices claims.

### ii. Trademark Dilution

In order to establish a violation of trademark dilution, a plaintiff must show that: (1) the mark is famous and distinctive; (2) use in commerce by the defendant; (3) the defendant began using the mark after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or tarnishment. 15 U.S.C. § 1125(c)(1); *see also Jada Toys*, 518 F.3d at 634.

To determine whether a mark has acquired fame, courts consider the following factors: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. 15 U.S.C. § 1125(c)(2)(a); *see also Jada Toys*, 518 F.3d at 635.

Plaintiffs adequately allege that the Juicy Marks have acquired fame by alleging that: (1) Plaintiffs have continuously and exclusively used the Juicy Marks in connection with Plaintiffs' products and services; (2) various celebrities have worn Plaintiffs' products; (3) Plaintiffs' products have appeared in fashion and women's magazines, on popular television programs, and in motion pictures; and (4) Plaintiffs own three federally registered trademarks for the Juicy Marks.

(Compl. at ¶¶ 8, 11-15, 33-38.) Plaintiffs further allege that Defendants, who pleaded guilty for conduct arising out of their counterfeiting activities, began using the Juicy Marks after those marks became famous. (*Id.* at ¶ 33.)

Plaintiffs also adequately allege that Defendants used the Juicy Marks in commerce by selling counterfeit jewelry bearing those marks in Elegance. (*Id.* at ¶ 35.) Plaintiffs further allege that Defendants' use of the Juicy Marks to sell counterfeit jewelry dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Juicy Marks. (*Id.* at ¶ 36.) Plaintiffs' trademark dilution claim is further supported by their allegation, which must be accepted as true, that Defendants' products contained lead but they failed to provide the proper precautionary labeling which, in turn, could potentially tarnish the Juicy Marks. (*Id.* at ¶ 16.) Accordingly, Plaintiffs have sufficiently alleged the elements of their trademark dilution claim and the Courts find that Plaintiffs are entitled to an entry of default judgment on this claim.

### c. The Sum of Money at Stake in the Action

"[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) (Manella, J.). Although the amount of actual damages is unclear because Plaintiffs have not had the benefit of discovery, Defendants could potentially be liable for up to $2,000,000 in statutory damages due to willful infringement. Plaintiffs, however, seek monetary damages for non-willful infringement in the amount of $100,000 from each defendant. (Pls.' Mem. at 10:4-6.). Therefore, Plaintiffs' request is within the realm of reasonable relief.

### d. Dispute Concerning Material Facts

Plaintiffs filed a well-pleaded Complaint against Defendants for infringement of the Juicy Marks. Defendants also pleaded guilty to criminal charges arising out of the facts and circumstances of this action. (Defs.' Opp. at 4:3-4.) Indeed, Defendants admit liability and challenge only the amount of

damages. (*Id.* at 4:4-5.) Therefore, there are no disputes concerning any material facts and this factor consequently weighs heavily in favor of an entry of default judgment. *See Derek Andrew*, 528 F.3d at 702.

### e. Excusable Neglect

Defendants do not dispute that they received notice of the action. Yet they failed to respond to the Complaint or otherwise take part in the litigation until they filed an opposition to this Motion. In their opposition, Defendants' only basis for not responding to the Complaint is that service was defective. Because Defendants' do not dispute that they received notice of the action, the possibility of excusable neglect is remote and this factor warrants an entry of default judgment.

### f. Policy Favoring Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, this preference is not dispositive, particularly where a defendant's failure to participate in the litigation "makes a decision on the merits impractical, if not impossible." *Pepsico,* 238 F. Supp. 2d at 1177. Defendants failed to respond or defend this action and Defendants now admit liability for some amount of damages. (Defs.' Opp. at 4:3-5.) Therefore, this factor weighs significantly in favor of an entry of default judgment.

Upon consideration of the *Eitel* factors, the Court finds that Plaintiffs are entitled to an entry of default judgment.

## IV. Damages

### a. Statutory Damages

The Lanham Act provides for damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just". 15 U.S.C. § 1117(c)(1). If the defendant's conduct was willful, the penalty may be enhanced to not more than $2,000,000 per

counterfeit mark.[4] 15 U.S.C. § 1117(c)(2). "If statutory damages are elected, 'the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'" *Peer Int'l Corp v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)).

Plaintiffs allege that Defendants willfully infringed the Juicy Marks, collectively. (Compl. at ¶ 24.) However, Plaintiffs seek damages for non-willful infringement. (Pls.' Mem. 10:1-6.) In particular, Plaintiffs seek statutory damages in the amount of $100,000 from each Defendant for infringement of the Juicy Marks. (*Id.* at 10:4-6.) Defendants admit that they are liable for some amount of damages but they contend that the requested damages are excessive and inequitable. (Defs.' Opp. at 4:3-5, 4:19-24.) Defendants state that their records, computers, and inventory were all seized due to the criminal action and they are therefore unable to account for profits for the infringing conduct. (*Id.* at 4:6-8.) Defendants nonetheless argue that the exhibits attached to the Motion for Default Judgment show that three products bearing the Juicy Marks were each sold for $27.50. (*Id.* at 4:8-13.) Defendants further state that 2,276 products bearing the Juicy Marks were seized by federal agents and that, if Defendants sold each of those items at an average of price of $27.50, the sales would total less than $63,000, and profits would amount to even less. (*Id.* at 4:13-18.)

The obvious flaw in Defendants' argument is that their calculation fails to take into account actual sales. If the confiscated products alone were worth $63,000, actual sales may far exceed Plaintiffs' requested statutory damages. Moreover, in the plea agreements, Defendants admit to willfully infringing the Juicy Marks. Therefore, the Court considers not only the compensatory purpose, but also the punitive purpose, of damages. Because Plaintiffs allege that

---

[4] Plaintiffs incorrectly state that the threshold for statutory damages is $100,000 per counterfeit mark and $1,000,000 per counterfeit mark for willful infringement. (Pls.' Mem. at 8:9-11.)

| | |
|---|---|
| 1 | Defendants willfully infringed Plaintiffs' three trademarks and it is impossible to |
| 2 | determine actual damages absent discovery, an award of $300,000, $100,000 for |
| 3 | each trademark, is fair and appropriate. *See Chanel, Inc. v. Lin*, 2010 U.S. Dist. |
| 4 | LEXIS 61295, *40 (N.D. Cal. May 7, 2010) (Spero, Mag.) (awarding $456,000 in |
| 5 | statutory damages for willful infringement of nineteen trademarks); *Adobe Sys.* |
| 6 | *Inc. v. Kern*, 2009 U.S. Dist. LEXIS 123566, *9 (N.D. Cal. Nov. 24, 2009) |
| 7 | (Larson, Mag.) (awarding $250,000 in statutory damages for the willful |
| 8 | infringement of five federally registered trademarks); *Microsoft Corp. v. Nop*, 549 |
| 9 | F. Supp. 1235, 1236, 1238 (E.D. Cal. 2008) (Drozd, Mag.) (awarding $100,000 |
| 10 | for each of the plaintiffs' seven trademarks, in addition to damages for copyright |
| 11 | infringement where the plaintiff alleged willful infringement but sought statutory |
| 12 | damages for non-willful infringement). Accordingly, the Court awards Plaintiffs |
| 13 | damages in the amount of $300,000, representing $100,000 per federally |
| 14 | registered trademark, from Defendants, to be owed jointly and severally. |
| 15 | **b. Attorney's Fees and Costs** |
| 16 | Under the Lanham Act, an award of reasonable attorneys' fees and costs is |
| 17 | provided for in "exceptional cases" of trademark infringement. 15 U.S.C. § |
| 18 | 1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' |
| 19 | fees are available in infringement cases where the acts can be characterized as |
| 20 | malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l* |
| 21 | *Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002). Attorneys' fees are appropriate |
| 22 | where, by entry of default judgment, the court determines that the acts were |
| 23 | committed knowingly and intentionally. *Id.* Plaintiffs adequately allege that |
| 24 | Defendants willfully and knowingly infringed Plaintiffs' trademarks and |
| 25 | Defendants admitted willful infringement of the Juicy Marks in their plea |
| 26 | agreements. Therefore, the Court finds that an award of attorneys' fees and costs |
| 27 | are appropriate. |
| 28 | To calculate an award of attorneys' fees, courts employ the lodestar method |

set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), in which courts multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). After identifying the "lodestar figure," a court may make adjustments based on the record of the particular case. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008). In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit enumerated the following factors that a court may consider to determine the reasonableness of a fee award, if such considerations have not already been subsumed in the lodestar calculation: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Plaintiffs request reimbursement at a rate of $300 per hour. (Damone Decl. at ¶ 6.) Plaintiffs' counsel has been a member of the California Bar since 1988 and has worked in trademark and copyright litigation for the past four years. (*Id.*) Based on his experience and background, the Court finds that the rate requested, $300 per hour, is reasonable.

Based on that hourly rate, Plaintiffs request attorneys' fees in the amount of $7,350 for expenses incurred in the prosecution of this action. Specifically, Plaintiffs' counsel declared that he billed: (1) one (1) hour for obtaining and reviewing the criminal file; (2) eight (8) hours for preparing the Complaint and

accompanying documents; (3) two (2) hours for preparing the request for entry of default judgment; (4) two (2) hours for obtaining and reviewing the updated criminal file; and (5) eleven and one-half (11.5) hours for preparing the Motion for Default Judgment. (*Id.* at ¶ 7.) The Court find that Plaintiffs' request for fees is reasonable. *See BMW of N. Am., LLC v. Mussari Motors, Inc.*, 2010 U.S. Dist. LEXIS 35881, *2-5 (S.D. Cal. Apr. 9, 2010) (awarding $14,027.47 in attorneys' fees and costs in a trademark infringement action involving a default judgment) (Hayes, J.); *see also Shakey's USA v. Tutto's Pizza Corp.*, 2010 U.S. Dist. LEXIS 2026, *2 (E.D. Cal. Jan. 12, 2010) (Wanger, J.) (awarding $13,658 in attorneys fees in conjunction with a default judgment). The Court also notes that, based on the amount of damages, Plaintiffs would be entitled to $9,600 pursuant to Local Rule 55-3.

Therefore, the Court finds that Plaintiffs are entitled to attorneys' fees in the amount of $7,350 and costs, to be determined by the Clerk of Court as provided by Local Rule 54.

## V. Injunctive Relief

Pursuant to the Lanham Act, a court is authorized to grant injunctive relief to prevent violations of the rights of trademark holders. 15 U.S.C. § 1116; *see also Coach Servs. v. Cheap Sunglasses*, 2010 U.S. Dist. LEXIS 68200, *5-6 (S.D. Cal. Jul. 6, 2010) (Benitez, J.). Plaintiffs request a permanent injunction to prevent Defendants from engaging in any future infringement of the Juicy Marks. (Pls.' Mem. at 10:21-22.) Defendants do not object to the terms of Plaintiffs' proposed injunction. Accordingly, Plaintiffs are also awarded a permanent injunction, set forth separately in the Court's Permanent Injunction.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment and awards Plaintiffs damages in the amount of $300,000, attorneys' fees in the amount of $7,350, costs to be determined by the Clerk of

Court pursuant to Local Rule 54, and a permanent injunction, which is set forth separately.

IT IS SO ORDERED.

DATED: September 10, 2010        By _____
                                 CONSUELO B. MARSHALL
                                 UNITED STATES DISTRICT JUDGE